IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PRESTIGE CAPITAL CORPORATION,

Plaintiff

v.                                                              CIVIL NO. 16-1998 (GAG)

UNITED SURETY AND INDEMNITY COMPANY,

Defendant.

**OPINION AND ORDER**

On May 29, 2016, Prestige Capital Corporation, ("Prestige" or "Plaintiff") filed the instant suit against United Surety and Indemnity Company ("USIC") seeking reimbursement of the funds USIC acquired in an interpleader action in local court. (Docket No. 1.)  In essence, Prestige argues it has a superior claim over the $104,505.36 conferred to USIC and thus, requests the Court order their reimbursement. Id.  Prestige invokes the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Pending before the Court is USIC's Motion to Dismiss at Docket No. 10.  After carefully reviewing the parties' submissions and pertinent law, the Court **GRANTS** USIC's Motion to Dismiss.

**I.   Relevant Factual and Procedural Background**

Prestige is a New Jersey corporation with its principal place of business in Fort Lee, New Jersey that provides accounts receivables financing, among other services. (Docket No. 1 ¶ 4.) USIC is a corporation organized under the laws of Puerto Rico that engages in the surety business. Id. ¶ 5.

**Civil No. 16-1998 (GAG)**

    A.  <u>Prestige-Pipeliners: Purchase and Sale Agreements</u>

On June 9, 2005, Prestige and Pipeliners of Puerto Rico, Inc. ("Pipeliners") entered into a Purchase and Sale Agreement (the "P & S Agreement") under which Pipeliners sold to Prestige certain accounts receivables and contract rights of Pipeliners. <u>Id.</u> ¶ 6. Section 11 of the P&S Agreement provides that Pipeliners grants to Prestige a continuing security interest in, and a lien upon, all its accounts, inventory, instruments, documents, chattel paper and general intangibles, as such terms are defined in the Puerto Rico Commercial Transactions Act, then existing or thereafter acquired by Pipeliners at any time which were in Prestige's possession. <u>Id.</u> ¶ 7.

    B.  <u>Pipeliners-PRASA Contracts</u>

Pipeliners entered into several contracts with the Puerto Rico Aqueduct and Sewer Authority ("PRASA") for the provision of services in connection with the maintenance, repair and construction of PRASA's infrastructure. <u>Id.</u> ¶ 9. On May 19, 2010, PRASA and Pipeliners executed the "Agreement for Capacity Increase of the Sewer Trunk from 8 to 10" and Connections, Cabo Rojo, Puerto Rico". <u>Id.</u> ¶ 10. USIC issued a Payment and Performance Bond to guarantee the project's completion. <u>Id.</u> These PRASA contracts required that PRASA pay Pipeliners on the basis of certifications of work and purchase of materials. Two of these certifications were the following: A) Certification #CIF-7128000-1 for $127,260.12 and B) Certification #CIP- 7128000-2 for $311,893.01 (collectively "Certifications 1 and 2"). <u>Id.</u> ¶ 11. These certifications were invoiced to PRASA for work done by Pipeliners. <u>Id.</u> Pursuant to the terms of the P&S Agreement, PRASA was required to pay to Prestige or Pipeliners the amounts which would be owed to Pipeliners under Certifications 1 and 2. <u>Id.</u> ¶ 12.

Pipeliners failed to fulfill its payment obligations; therefore, all amounts advanced by Prestige to Pipeliners became due. (Docket No. 1 ¶ 13.) Pipeliners defaulted under the terms and

**Civil No. 16-1998 (GAG)**

conditions of the P&S Agreement and, as of November 23, 2010, owed Prestige not less than $1,211,968.66, plus accruing costs and fees. Id. On November 23, 2010, Prestige served Pipeliners a notice informing that it had defaulted under the terms and conditions provided in the P&S Agreement, owing as of that date an outstanding balance of not less than $1,210,527.18, plus accrued interests and costs. It demanded payment thereof. Id. ¶ 14. On November 29, 2010, Prestige also served a notice of foreclosure of Pipeliners' accounts to its account debtors, including PRASA. Id. ¶ 15.

Due to Pipeliners' failure to pay, on November 30, 2010, Prestige filed a collection of monies civil action in this court against Pipeliners, PRASA —as assignee of the amounts owed by PRASA to Pipeliners through the P&S Agreement— and against the Economic Development Bank for Puerto Rico ("EDB") because this entity also claimed payment of the amounts owed by PRASA to Prestige (Case No. 10- 2155 (PG)) ("District Court Case"). (Docket No. 1 ¶ 16.)

    C. <u>The Interpleader Action</u>

On December 3, 2010, PRASA filed an interpleader action pursuant to Rule 19 of the Puerto Rico Rules of Civil Procedure, P.R. LAWS ANN. tit, 32A, App. V., in the Puerto Rico Superior Court, San Juan Part, to consign therein the funds requested for payment through the Certifications 1 and 2, (Case No. KAC 2010-1450(508) ("Interpleader Action"). (Docket No. 1 ¶ 17.) USIC was not party to the interpleader action because, at that moment, it had not disbursed any funds for the completion of the project, had not made any work related to the project; and had not made any claims to the funds whose payment had been requested through Certifications 1 and 2. Id. On May 20, 2011, PRASA notified Pipeliners that it had not complied with the terms of their agreement and was terminated for default. Id. As stated in the preceding paragraph, by this date PRASA had filed

**Civil No. 16-1998 (GAG)**

the interpleader action, thus admitting that the amounts requested in Pipeliners' Certifications 1 and 2 for work done by it were in fact owed. (Docket No. 1 ¶ 18.)

    D.  <u>Takeover Agreement</u>

On January 11, 2013, PRASA and USIC executed a Takeover Agreement whereby USIC would complete the project. <u>Id.</u> ¶ 19. Paragraph 3(b) of the Takeover Agreement provides that Pipeliners sent Certifications 1 and 2 to PRASA for work performed. <u>Id.</u>

USIC allegedly spent $279,321.75 in the completion of the project. <u>Id.</u> Because this amount exceeded the Project's remaining balance (after the Certifications 1 and 2 consigned of the funds in the interpleader action by $104,505.56) USIC filed a motion to intervene and a complaint in the interpleader action claiming a preferential credit to recover the excess amount spent to complete the project. <u>Id.</u> ¶ 20.

The District Court case was eventually settled through a "Final Settlement Agreement" dated July 14, 2015. <u>Id.</u> ¶ 21. Negotiations between the defendants in the interpleader action ensued and a stipulation between Prestige and the Puerto Rico Treasury Department was executed. <u>Id.</u> USIC opposed this stipulation. In order to end the controversies as to the monies consigned by PRASA through the interpleader action and permit that the stipulation between Prestige and the Puerto Rico Treasury Department be approved, Prestige and USIC negotiated and executed a stipulation to eliminate the sole objection to the stipulation between Prestige and Puerto Rico Treasury Deptartment. <u>Id.</u> Partial Judgment entered in the Interpleader Action and notified on August 26, 2015, approving both stipulations and providing that under the stipulation between Prestige and USIC, Prestige reserved its right to claim that USIC reimburse to Prestige the $104,505.36 it had received from the funds deposited in court in order to eliminate the objection to the stipulation between Prestige and P.R. Treasury. (Docket No. 1 ¶ 21.)

E. <u>The instant action</u>

On May 19, 2016, Prestige filed the above-captioned complaint, requesting that USIC reimburse it the $104,505 to which is legally entitled under the duly recorded Agreement.

In its complaint, Prestige alleges it had a perfected first priority lien for any and all accounts receivable due to Pipeliners by PRASA, including those amounts invoiced by Pipeliners through the Certifications. <u>Id.</u> ¶ 33. Prestige alleges PRASA discharged its payment obligation before Pipeliners was terminated for default and before the USIC assumed the completion of the Project, and thus it contends that the consigned funds were not PRASA's property or in its possession when the Takeover Agreement was executed and the work completed. Consequently, Prestige claims to have a first priority lien to the consigned funds and "is entitled to receive them." <u>Id.</u> ¶ 30. Prestige further posits that "the terms of the P&S Agreement provide that Pipeliners is liable to Prestige for the amounts invoiced by Pipeliners to PRASA in the Certifications." <u>Id.</u> ¶ 32. Prestige concludes that, because these amounts were no longer owed by PRASA, USIC has no claim as surety. (Docket No. 1 ¶ 36.) Because Prestige had a perfected first security interest in Pipeliners accounts, Prestige is entitled to the funds consigned by PRASA. <u>Id.</u> ¶ 37.

USIC moves to dismiss the above-captioned complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 10.) In essence, USIC contends Prestige's claim fails because, as a matter of law, USIC —as a performing surety— had a preferential interest over the unpaid funds of the bonded project which is superior to any legal right that Prestige may claim over them. (Docket No. 10.) USIC contends that pursuant to the subrogation doctrine, as a performing surety it is entitled to the funds that PRASA deposited at the Court of First Instance to recover its costs of finishing the project. As a matter of law, its right to those funds is superior to any rights that Prestige held. Particularly, Prestige's allegation that its claim preceded USIC's by

**Civil No. 16-1998 (GAG)**

two years has no relevance whatsoever to USIC's subrogation rights.  (Docket No. 10 at 9-10.)  Thus, USIC posits Prestige has no right to the funds it acquired from the interpleader action.  Id.  USIC further requests attorneys' fees.  Id.

In opposition to USIC's motion to dismiss, Prestige contends it is legally entitled to recover the consigned funds wrongfully paid out to USIC. (Docket No. 15.)   Prestige argues that at the moment PRASA filed the interpleader action USIC was not party to the interpleader action and had not disbursed funds for the completion of the project.  Prestige further posits that pursuant to the provisions of the Puerto Rico Civil Code governing consignation, payment is considered made upon the deposit of the funds.  Accordingly, Prestige argues that payment for Certifications 1 and 2 should be deemed made upon the consignation of the funds. (Docket No. 15 at 10.)  Thus, Prestige posits said funds were wrongfully paid to USIC, given that as surety USIC did not have a superior right over paid funds.   Therefore, Prestige posits it has a superior right over the funds at issue and thus, now Prestige seeks reimbursement.  Id.  Per leave of Court, USIC replied.  (Docket No. 18.)

II.   **Standard of Review**

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Id.  A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." Iqbal, 556 U.S. at 678-79.  Second, the court must then "take the complaint's well-[pleaded] (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

### III.  Legal Analysis

Under Puerto Rico law, "a surety is subrogated to the owner's and contractor's rights in contract retainages as a consequence of its performance of the contractual obligations of the contractor, and this right of subrogation is superior to that of an attaching creditor, even where such a creditor has attached the retainages before subrogation occurs." Segovia Dev. Corp. v. Constructora Maza, Inc., 628 F.2d 724, 729–30 (1st Cir. 1980).  Article 1737 of the Puerto Rico Civil Code states that:

> A surety who pays for a debtor shall be indemnified by the latter.
>
> The indemnity consists of: (1) The total amount of the debt.  (2) Legal interest on the same from the day on which the payment may have been communicated to the debtor,

**Civil No. 16-1998 (GAG)**

> even when it did not produce interest for the creditor. (3) The expenses incurred by the surety after the latter has informed the debtor that he has been sued for payment. (4) Losses and damages, when proper. The provisions of this section shall be valid, even should the security have been given without knowledge of the debtor.

P.R. Laws Ann. tit. 31, § 4911; see also U.S. Fid. & Guar. Co. v. Challenge Const. Corp., 704 F. Supp. 2d 73, 78 (D.P.R. 2009). Moreover, Article 1738 provides that a surety who pays for a debtor is "subrogated in all the rights which the creditor had against the debtor." P.R. Laws Ann. tit. 31, § 4912. Article 1166 states that: "Subrogation transfers to the subrogated the credit, with the corresponding rights, either against the debtor or against third persons, be they sureties or holders of mortgages." P.R. Laws Ann. tit. 31, § 3250; see also Segovia Dev. Corp., 628 F.2d at 727.

The heart of the dispute between the parties lies on whether the consigned funds should be considered *paid* or *unpaid*, for purposes of the subrogation doctrine. USIC argues that this case is undistinguishable from National Shawmut Bank and American Fire & Casualty Co., and therefore constitutes the governing precedent of the First Circuit on the subject of sureties. As in those cases, the funds presently at issue had not been paid to Prestige prior to USIC's subrogation; rather, they had been earned and certified by Pipeliners, but had not been paid. Therefore, USIC, as a performing surety, had a right over the funds of the bonded project, which is preferential to any other interest that Prestige may assert. (Docket No. 10 at 10.)

The First Circuit Court held that surety *could not* recover progress payments eared and paid *prior* to default. However, a surety "has a superior claim by way of subrogation" and therefore *could* recover progress payments *earned prior to default, but not paid*. American Fire & Casualty Co. 411 F.2d at 758. In American Fire & Casualty Co. the First Circuit adhered to its holding in National Shawmut Bank this occasion concerned rights of a surety under Puerto Rico law and what a surety a recover under the theory of legal subrogation.

**Civil No. 16-1998 (GAG)**

"The teaching of National Shawmut Bank, is that the surety has a superior claim to these payments. But for the surety's completion of the work, the obligee on the bond, be the owner or prime contractor, would have been entitled to apply the funds against the cost of completion. It is the surety's performance which frees the funds, and, in our view, the surety is entitled to them." American Fire & Casualty Co., 411 F.2d at 758 (citing Nat'l Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F.2d 843 (1st Cir. 1969)).

> Prior to default, the contractor had the right to assign progress payments and had the Bank received payment, it could not (absent circumstances amounting to fraud) have been divested by the surety. *But upon default, the surety which is obligated to complete the work steps into the shoes of the government- not of the contractor which on default has forfeited its rights.* It is subrogated not only to the right of the government to pay laborers and materialmen from funds retained out of progress payments, *but also to the government's right to apply to the cost of completion the earned but unpaid progress payments in its hands at the time of default.*

Nat'l Shawmut Bank 411 F.2d at 848) (internal citations omitted) (emphasis added).

The Court now turns to Prestige's argument regarding the legal effect of PRASA's payment through the judicial consignment of funds. Prestige argues that when partial Judgment in the interpleader action was entered, pursuant to the Puerto Rico Supreme Court's T.O.L.I.C decision, PRASA's payment "had to be deemed made on the day when the funds were consigned through the Interpleader. As such, the funds were earned and paid before USIC's intervention. USIC did not have any alleged preferential right on such date." Id. at 12.

Consignation is "the legal deposit… of the thing owed. The asset is placed under the power of the judicial authority, which shall retain it and put it at the disposal of the creditor." T.O.L.I.C. v. Rodriguez Febles, 170 P.R. Dec. 804, 818-821 (2007) (Slip. Trans. Op. at 1) (Appendix 1 to this Opinion). Articles 1130 to 1135 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, §§ 3180-3185, govern the payment of obligations by way of consignation. While Article 1130 provides that

consignation releases the debtor from liability "when several persons claim a right to collect," Article 1134 of the Puerto Rico Civil Code provides that:

> After the consignation has been duly made the debtor may request the court or judge to order the cancellation of the obligation.
>
> Until the creditor may accept the consignation or a judicial decision should be rendered that it was properly done, the debtor may withdraw the thing or amount consigned, leaving the obligation in force.

P.R. Laws Ann. tit. 31, § 3184.

> Although this legal provision establishes that the debtor shall not be released from his or her obligation until there is a corrective court order, this does *not* imply that debtor is obligated to pay interest from the time of the consignation until the court order issues. Formal release from the obligation—which arises from the contract—is one thing, while the requirement to pay interest is another. "[S]panish doctrine *agrees that the retroactive effectiveness of a properly executed consignation extends to the moment the deposit took place*."

T.O.L.I.C, 170 P.R. Dec. at 819; Slip. Trans. Op. at 1 (quoting J. Vélez Torres, Derecho de Obligaciones [Obligations Law], 189 (Interamerican U. CLE Program, 2nd rev. ed., 1997)) (emphasis added).

Prestige contends that the consignment of the funds by PRASA should be considered payment pursuant to the provisions of the Puerto Rico Civil Code. As such, December 3, 2010, would be the date of payment of Certifications 1 and 2. If Prestige's theory were correct, Certifications 1 and 2 would have been earned and paid "before USIC intervened in the project" and pursuant to National Shawmut Bank and American Fire & Casualty Co., USIC would not be legally entitled to recover these funds. (Docket No. 15 at 11.)

The Court is not convinced by Prestige's contention that PRASA's consignation of the funds materialized payment. First, while the funds remained consigned in state court, at no moment was Prestige in possession of these funds. Notwithstanding, Prestige argues that the consignation of the funds should treated as PRASA's payment of Certifications 1 and 2 to Prestige. This argument does

**Civil No. 16-1998 (GAG)**

not hold water. While the funds remained consigned pending the outcome of the interpleader proceeding, their ownership was disputed. More so, at the moment Prestige alleges it had a superior right over the funds, the consignation had not been approved by the Court, therefore, as per Article 1134 of the Puerto Rico Civil Code, PRASA could withdraw the funds at any moment.

Plaintiff's "at moment of consignation" theory also fails. The Court the Puerto Rico Supreme Court's ruling in T.O.L.I.C. discusses the effects of consignation over payment interests. The Supreme Court held that upon approval of the consignation by the court, payment is deemed made at the moment of consignment, for purposes of interest over the amount owed. In its reply, USIC correctly points out that Prestige misconstrues the T.O.L.I.C. ruling. Simply put, the reasoning behind the ruling cannot be blindly extended to the case at bar.

> What the court order does is to rule that consignation has been properly done and recognize the intended effect of release sought by debtor when depositing the thing; hence, it must become effective as of [that] moment." We thus conclude that, even though debtor's formal release depends on the court finding that the consignation was properly done, payment of interest as of the consignation date does not apply if it was found, in fact, to have been properly done. We resolve that in cases such as this, where consignation is ruled to be correct, the effect of payment is retroactive to the date on which the thing was deposited . . . .

T.O.L.I.C, 170 P.R. Dec. at 820; Slip. Trans. Op. at 2 (internal quotations and citations omitted). It in uncontested that, in this case, the funds deposited in the interpleader action had been earned prior to Pipeliners' default. Plaintiff concedes that the consigned funds constituted PRASA's payment of the work invoiced in Certifications 1 and 2. Although USIC was not included originally, the Puerto Rico Court of First instance approved PRASA's consignation *after* USIC has already formally joined the interpleader action as an intervening party.

**Civil No. 16-1998 (GAG)**

In light of the above, the Court finds that the funds at issue were earned yet unpaid project funds that, pursuant to governing First Circuit precedent and applicable Puerto Rico law, USIC had superior right to than Prestige. By way of subrogation, USIC acquired Pipeliners' right over the earned yet unpaid funds. "[T]he surety's right of subrogation may also be viewed from the standpoint of his filling the shoes of the contractor whose debts he has satisfied." Fed. Ins. Co., 500 F. Supp. at 250 (citing National Shawmut Bank, 411 F.2d at 843.).

In sum, the Court finds that Prestige's complaint fails to state a claim upon which relief may be granted because Prestige is not legally entitled to the funds for which it seeks reimbursement. For the foregoing reasons, the Court **GRANTS** USIC's Motion to Dismiss at Docket No. 10 and **DISMISSES with prejudice** Prestige's claims.

**IV. Attorney's Fees**

Lastly, USIC requests an award for attorney's fees for temerity pursuant to Rule 44 of the Puerto Rico Rules of Civil Procedure arguing Prestige's complaint is frivolous, should have never been filed, and has forced USIC to incur in unnecessary expenses and inconvenience to defend itself. (Docket No. 10 at 14.) In opposition, Prestige argues that because this case it at the initial stage of litigation, USIC's temerity allegation is "utterly ridiculous" as it "insinuate[s] that Prestige's litigious conduct has prolonged litigation." (Docket No. 15.) At first, the Court was skeptical as to USIC's temerity allegation. However, a review of Prestige's litigation conduct to date sings a different tune.

Pursuant to Rule 44 of the Puerto Rico Rules of Civil Procedure, a prevailing party is entitled to attorney's fees and interest computed from the filing of the complaint when the losing party has been obstinate throughout the litigation. Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir. 1994) ("In

a diversity case in which the substantive law of Puerto Rico supplies the basis of decision, the federal court must give effect to Rules 44.1(d) and 44.3(b) of the Puerto Rico Rules of Civil Procedure.").

Roughly two months after USIC filed its motion to dismiss that the Court entertains today, on November 7, 2016, Prestige moved for summary judgment. (Docket No. 19.) Still pending before the Court, Prestige's summary judgment is a preemptive attack, as it was filed while USIC's motion to dismiss was pending before the Court and before the parties engaged in discovery, considering that the initial scheduling conference had not been held. See L. CIV. R. 16 (D.P.R. 2010). Prestige's motion for summary judgment rehashes the same theories raised and argued at the motion to dismiss stage, and thus, these theories were still pending before the Court, until today. As a result of Prestige's unreasonable litigation strategy, USIC had no other choice but to respond in opposition and file a cross-motion summary judgment. (Docket Nos. 27; 28.)

"[A] losing party who has been obstinate during the course of a lawsuit can be held liable for prejudgment interest (if a money judgment has eventuated) and for its adversary's attorneys' fees." Gomez v. Rodriguez-Wilson, 819 F.3d 18, 23–24 (1st Cir. 2016); De León López v. Corporación Insular de Seguros, 931 F.2d 116, 126 (1st Cir. 1991) (internal quotations omitted). The purpose of awarding attorney's fees in cases of obstinacy is to impose a penalty upon a losing party that because of his stubbornness, obstinacy, rashness, and insistent frivolous attitude has forced the other party to needlessly assume the pains, costs, efforts, and inconveniences of a litigation. Fernandez v. San Juan Cement Co., 118 P.R. Dec. 713, 18 P.R. Offic. Trans 823, 830 (1987). The imposition of pre-judgment interest shall follow "when the losing party has been obstinate; and, both pursue the same end: to discourage litigation and to favor transactions, by requiring the obstinate party to compensate the economic hardships and inconveniences caused to

the other party by the obstinate conduct." Insurance Co. of P.R. v. Superior Court, 100 P.R. 404 (1972).

"[O]bstinacy is to be judged in light of the overall circumstances of the particular case." Gomez, 819 F.3d at 24 (quoting Dopp, 38 F.3d at 1253.)  "In order to determine if a party has been obstinate, we must determine whether a litigant has been "unreasonably adamant or stubbornly litigious, beyond the acceptable demands of the litigation, thereby wasting time and causing the court and the other litigants unnecessary expense and delay." Gomez, 819 F.3d at 24 (internal quotations omitted).  In sum, obstinacy "(1) forces an avoidable litigation, (2) needlessly prolongs it or (3) requires opposing party to engage in unnecessary efforts". Fernández, 18 P.R. Offic. Trans 823, 830; see also Nuñez Santiago v. P.R. Elec. Power Auth., 206 F. Supp. 2d 231, 232-33 (D.P.R. 2002).

Prestige's impetuous behavior does not sit well with the Court.  This tactic casts doubt as to the seriousness and reasonableness of Prestige's representations.  By moving for summary judgment, Prestige made USIC waste time and incur in unnecessary efforts and economic hardship by having to respond to its filings.

In light of the above, the Court finds that Prestige acted in an obstinate and frivolous manner and thus, pursuant to Rule 44.1 of the Puerto Rico Rules of Civil Procedure, attorney's fees are proper.  Within thirty days from the entry of this Opinion and Order, USIC shall submit to the Court a supplemental petition for attorney's fees award, including hourly rate, amount of hours in attorney's fees, and any additional information warranted by the applicable law.

For the foregoing reasons, the Court **GRANTS** USIC's request for attorney's fees.

Civil No. 16-1998 (GAG)

## V. Conclusion

In light of the above, the Court **GRANTS** USIC's Motion to Dismiss and **DISMISSES with prejudice** Plaintiff's claims.

**SO ORDERED.**

In San Juan, Puerto Rico this 28th day of March, 2017.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge